```
 1                IN THE UNITED STATES DISTRICT COURT
 2                  FOR THE DISTRICT OF NEBRASKA
 3
 4   _____
 5   UNITED STATES OF AMERICA,        )     4:15CR3098
 6                                    )     September 3, 2015
 7                  Plaintiff,        )     10:52 a.m.
 8                                    )     Lincoln, Nebraska
 9   vs.                             )
10                                    )
11   COREY J. LAVIGNE,               )
12                                    )
13                  Defendant.        )
14   _____  )
15
16               TRANSCRIPT OF CHANGE OF PLEA HEARING
17              BEFORE THE HONORABLE CHERYL R. ZWART
18                  UNITED STATES MAGISTRATE JUDGE
19
20                    A-P-P-E-A-R-A-N-C-E-S:
21
22   FOR THE PLAINTIFF:          MR. WILLIAM W. MICKLE II
23                               Assistant U.S. Attorney
24                               100 Centennial Mall North
25                               Suite 487, Federal Building
26                               Lincoln, NE 68508
27
28   FOR THE DEFENDANT:          MR. TIMOTHY S. NOERRLINGER
29                               Attorney at Law
30                               1111 Lincoln Mall
31                               Suite 300
32                               Lincoln, NE 68508-3908
33
34   DIGITAL OPERATOR:           JERI BIERBOWER
35
36   TRANSCRIBER:                LORI J. SEHNERT
37                               General Reporting Service
38                               610 J Street, Suite 20
39                               Lincoln, NE  68508
40
41                           -  -  -
42
43
44
45
46
47
48
49   Proceedings recorded by digital sound recording, transcript produced
50   by transcription service.
51
```

1    (Thursday, September 3, 2015, at 10:52 a.m.)

2    THE COURT:  We're on the record in Case No. 4:15CR3098,

3    United States of America vs. Corey J. Lavigne.  Counsel, please

4    enter your appearance.

5    MR. MICKLE:  Your Honor, please show the appearance of

6    William Mickle on behalf of the United States.

7    MR. NOERRLINGER:  And, Judge, Timothy Noerrlinger,

8    along with the defendant, Mr. Lavigne.

9    THE COURT:  Mr. Lavigne, you're here today because the

10   Government is stating that you are agreeing to a filing of an

11   Information, and that you intend to plead guilty to that

12   Information.  Is that true?

13   THE DEFENDANT:  Yes.

14   THE COURT:  We're going to start out today, first of

15   all, by me explaining to you that, when we get to the plea

16   hearing portion of this, if we get that far, I am not your

17   sentencing judge and I'm not the judge who will determine whether

18   your plea is accepted and whether your Plea Agreement is

19   accepted.  Those matters will be taken up by Judge Gerrard, who

20   is your sentencing judge.  But what I can do for you today is

21   gather some information from you and make a recommendation to

22   Judge Gerrard on those issues.  Do you agree to proceed before

23   me?

24   THE DEFENDANT:  Yes.

25   THE COURT:  Now, there is a difference between an

1    Indictment and an Information.  You are entitled to an Indictment

2    on cases brought -- criminal charges brought in federal court.

3    What is going to happen, at this time, is, I'm going to have Mr.

4    Mickle, first of all, explain to you the difference between an

5    Information and an Indictment.  Then he's going to explain to you

6    what the Information, that he proposes to file, says and what the

7    consequence of that would be if you are found guilty, and then

8    I'll have some questions for you.  So, listen to Mr. Mickle right

9    now.

10             MR. MICKLE:  Thank you.

11        Mr. Lavigne, you have the right, by law, to be indicted or

12   charged by a grand jury of between 16 and 23 persons.  An

13   Indictment is a plain, concise, and definite written statement of

14   the essential facts constituting the offense or offenses charged.

15   Before an Indictment could be returned against you, the grand

16   jury must find, from the evidence presented to it, that there was

17   probable cause to believe an offense had been committed and that

18   you committed it.  If the findings were made, the Indictment

19   would be returned charging you with those offenses.  And if you

20   entered a plea of not guilty thereafter, you would be tried on

21   those charges.

22        Now, the law permits you to waive or give up your right to

23   Indictment by a grand jury and agree to the filing of an

24   Information.  An Information, like an Indictment, is a statement

25   of the essential facts constituting the offense or offenses

1    charged, and if you enter a plea of not guilty to the charges in

2    an Information, you would proceed to trial on those charges.

3    Now, you do not have to plead guilty, even though you waive

4    Indictment and agree to the filing of an Information.  The case

5    is handled the same way whether you proceed by way of an

6    Indictment or by way of an Information.

7        If you waive Indictment and agree to the filing of an

8    Information, you still have the right to plead not guilty and to

9    have a jury trial, the same as if you had been indicted by a

10    grand jury.  The Indictment that -- excuse me, the Information

11    that I intend to have filed is a one-count Information charging

12    you with conspiracy to produce false identification documents

13    that occurred here in the District of Nebraska and elsewhere

14    between approximately May of 2012 and March of 2014.

15        The possible penalties for conviction of that offense

16    include a possible term of imprisonment of up to 15 years; a fine

17    of up to $250,000 or a combination of fine and imprisonment;

18    additionally, a term of supervised release of up to three years;

19    and a $100 special assessment would be assessed.  Additionally,

20    the proposed Information includes allegations that the assets

21    identified and property identified in the Information constitutes

22    or was derived from proceeds obtained as a result of your

23    violation of the statute, or was property used or intended to be

24    used to commit the offenses, and that, as a result, the assets

25    and property identified in the Information should be forfeited to

1    the United States.

2        Mr. Lavigne, I need to ask several questions.  First, have

3    you heard and do you understand the explanation of your right to

4    Indictment and waiver of Indictment?

5             THE DEFENDANT:  Yes.

6             MR. MICKLE:  Do you understand the substance of the

7    charges contained in the Information, including the possible

8    punishment and the forfeitures?

9             THE DEFENDANT:  Yes.

10            MR. MICKLE:  Thank you.

11            THE COURT:  Sir, having heard what the distinction is

12   between an Indictment and an Information, do you have any

13   questions of me?

14            THE DEFENDANT:  No, I do not.

15            THE COURT:  Do you understand what the difference is

16   between them?

17            THE DEFENDANT:  Yes.

18            THE COURT:  Having heard what the charges are that the

19   Government proposes to file by Information, do you have any

20   question about those charges?

21            THE DEFENDANT:  No, I do not.

22            THE COURT:  Do you believe you understand the charges

23   and the possible penalties?

24            THE DEFENDANT:  Yes.

25            THE COURT:  Having heard what the difference is between

1    an Indictment and an Information, that you have the right to an

2    Indictment, and having heard what the Government proposes to

3    file, are you waiving your right to an Indictment and agreeing to

4    the filing of an Information?

5              THE DEFENDANT:  Yes.

6              THE COURT:  I do have your written Waiver of

7    Indictment.  You have signed it, along with your attorney.  I

8    have signed it now as well, and the clerk is instructed to file

9    the Information.

10              Now, I need to explain to you your constitutional rights.

11    You have the right to remain silent.  What that means is, you do

12    not have to say anything about the charges in the Information in

13    any court proceeding.  You do not have to provide a statement to

14    the Government or anybody asking for information on behalf of the

15    Government.  If you've already provided a statement, you do not

16    have to say anything more.  And if you ever start answering

17    questions, you could stop answering those questions at any time.

18    But you need to understand that what you choose to say, to anyone

19    other than your lawyer, can and will be used against you.  Do you

20    understand your right to remain silent?

21              THE DEFENDANT:  Yes.

22              THE COURT:  You have the right to counsel.  If you

23    could not afford counsel, counsel would be appointed for you at

24    no cost to you.  You have retained counsel, is that correct?

25              THE DEFENDANT:  Yes.

1  THE COURT:  If, at any point in time, you can no longer
2  afford counsel for this case, you need to understand that your
3  right to counsel exists for the entire case.  And you need to let
4  him know or let the Court know and we'll make sure you are
5  entitled to counsel and have counsel with you at all times.  Do
6  you understand that?

7  THE DEFENDANT:  Yes.

8  THE COURT:  You have the right to a jury trial.  At
9  that trial, you would have the right to see and hear any
10  witnesses who testify against you and to have them cross-examined
11  on your behalf.  You'll have the right to call witnesses for you.
12  If they will not come voluntarily, you can get a court order
13  called a subpoena to make them come and testify.  At the trial,
14  you can testify yourself, if you want to, or you could exercise
15  your right to remain silent.  If you remain silent at the trial,
16  the jury would not be allowed to consider your silence in
17  deciding whether you are guilty.  Finally, at the trial, the
18  Government would not get a conviction against you unless it was
19  able -- unless the Government is able to prove to every single
20  juror that you are guilty beyond a reasonable doubt.  Do you
21  understand all of those trial rights?

22  THE DEFENDANT:  Yes.

23  THE COURT:  Finally, sir, this is a federal case and,
24  in all federal cases, you are given at least 30 days to decide
25  how you want the case to resolve.  This is the first time you've

1    been in federal court on this case.  You can, if you want to,

2    take an additional 30 days before saying anything more about this

3    case.  What would you like to do at this time?

4            THE DEFENDANT:  Go forward.

5            THE COURT:  Go forward and plead guilty today, is that

6    correct?

7            THE DEFENDANT:  Yes.

8            THE COURT:  How do you wish to plead on the charges in

9    the Information?

10            THE DEFENDANT:  Guilty.

11            THE COURT:  I need to explain to you, sir -- I've

12    already explained that.  Please raise your right hand.  Do you

13    solemnly swear to tell the truth, the whole truth, and nothing

14    but the truth?

15            THE DEFENDANT:  Yes.

16                COREY J. LAVIGNE, DEFENDANT, SWORN

17            THE COURT:  You're now under oath, sir.  You've sworn

18    to tell the truth, which means if you lie during this proceeding

19    you can be separately prosecuted for the crime of perjury.  Do

20    you understand that?

21            THE DEFENDANT:  Yes.

22                            EXAMINATION

23    BY THE COURT:

24    Q.   I have in front of me a Petition to Enter a Plea of Guilty

25    and a Plea Agreement.  Do you have those documents in front of

Corey J. Lavigne, Examination

1    you?

2    A.   Yes, I do.

3    Q.   It appears that you signed the Plea Agreement on August 9th,

4    that you signed the Petition on August 31st, is that correct?

5    A.   Yes.

6    Q.   When you went over these documents, was your attorney with

7    you?

8    A.   Yes, he was.

9    Q.   Let's go to the Petition first.  That's the one with the

10   questions and answers in it.  Did you read these questions?

11   A.   Yes, I did.

12   Q.   Did your attorney explain the questions to you?

13   A.   Yes, he did.

14   Q.   Did you write down the answers?

15   A.   No, he did not.

16   Q.   You wrote down the answers?

17   A.   Correct.

18   Q.   Were the answers you wrote down the truth?

19   A.   Yes.

20   Q.   After going through the Petition, did you file it -- or sign

21   it?

22   A.   Yes.

23   Q.   Going to the Plea Agreement, did you read the Plea

24   Agreement?

25   A.   Yes, I did.

Corey J. Lavigne, Examination

1    Q.   Did your attorney explain the Plea Agreement to you?

2    A.   Yes, he did.

3    Q.   Were there any questions you had about the meaning of this

4    document that he was not able to answer?

5    A.   No, he did not.

6    Q.   And going through -- after going through the Plea Agreement,

7    did you sign it?

8    A.   Yes, I did.

9    Q.   On August 9th, when you went over the Plea Agreement, were

10   you under the influence of drugs or alcohol, or anything that

11   would impair your thinking?

12   A.   No, I was not.

13   Q.   On August 31st, when you went over the Petition, were you

14   under the influence of anything?

15   A.   No, I was not.

16   Q.   Are you under the influence of anything right now?

17   A.   No, I'm not.

18   Q.   Has anybody threatened you, in any way, to get you to plead

19   guilty?

20   A.   No, they have not.

21   Q.   Has anybody promised you anything, other than the promises

22   in the Plea Agreement, to get you to plead guilty?

23   A.   No, they have not.

24   Q.   Do you understand, sir, that, if the Court accepts your plea

25   of guilty, you will be found guilty of a felony?

Corey J. Lavigne, Examination

1    A.   Yes.

2    Q.   Do you understand you have the right to plead not guilty and

3    make the Government try to prove this case at trial?

4    A.   Yes.

5    Q.   Do you understand you are giving up your trial rights by

6    pleading guilty?

7    A.   Yes.

8    Q.   Now, you're appearing first in front of me today for the

9    first time in federal court, but it appears that you must have

10   had counsel for a period of time before today, is that correct?

11   A.   Yes.

12   Q.   And your counsel is Mr. Noerrlinger?

13   A.   Yes.

14   Q.   Do you believe that, through that course of time as you were

15   preparing for today, that he investigated this case sufficiently

16   so that you know what to do today?

17   A.   Yes.

18   Q.   Are you satisfied with his representation?

19   A.   Yes, I am.

20   Q.   Do you understand that, if you chose to go to trial, you

21   would have the right to counsel representation at that trial and,

22   if you could not afford counsel representation, an attorney would

23   be appointed to represent you at no cost to you?

24   A.   Yep.

25   Q.   Do you understand that, if you chose to go to trial, you

Corey J. Lavigne, Examination

1 would have a jury trial?

2 A. Yes.

3 Q. Do you understand that, at that trial, you would have the

4 right to see and hear the witnesses who testify against you and

5 to have them cross-examined on your behalf?

6 A. Yes.

7 Q. Do you understand you would have the right to call witnesses

8 for you and, if they would not come voluntarily, you could get a

9 court order called a subpoena to make them come and testify?

10 A. Yes.

11 Q. Do you understand that, at the trial, you could testify

12 yourself, if you wanted to, or you could exercise your right to

13 remain silent?

14 A. Yes.

15 Q. Do you understand that, if you remain silent at the trial,

16 the jury would not be allowed to consider that silence in

17 deciding whether you are guilty?

18 A. Yes.

19 Q. Do you understand that, if you went to trial, the Government

20 would not get a conviction against you unless it was able to

21 prove to every single juror that you are guilty beyond a

22 reasonable doubt?

23 A. Yes.

24 Q. Are you willing to give up all of those trial rights,

25 including your right to counsel representation at the trial, and

1    plead guilty in this case instead?

2    A.   Yes.

3    Q.   With a guilty plea, you will have a felony record.  With

4    that felony record comes the loss of civil rights.  Those rights

5    including the right to vote, the right to serve on a jury, the

6    right to hold a public office, the right to carry a weapon.  You

7    can also lose federal benefits, but you will lose rights.  Do you

8    understand that?

9    A.   Yes.

10   Q.   And knowing that you will lose civil rights, are you willing

11   to plead guilty?

12   A.   Yes.

13   Q.   Finally, there are community consequences that come with

14   having a felony record.  Particularly in cases like this, it can

15   affect employment in the future.  It can also affect housing.  Do

16   you understand that?

17   A.   Yes.

18   Q.   And knowing that those consequences exist and that the Court

19   can do little to help you with them, are you willing to plead

20   guilty?

21   A.   Yes.

22   Q.   You're looking at a sentence in this case of up to 15 years

23   in prison, a fine of up to $250,000 could be imposed in addition

24   to any term of imprisonment, supervised release of up to three

25   years, and a $100 mandatory special assessment.  Is that your

Corey J. Lavigne, Examination

1    understanding of what you're facing?

2    A.   Yes.

3    Q.   Has Mr. Noerrlinger explained the sentencing guidelines to

4    you?

5    A.   Yes, he has.

6    Q.   Has he explained that those guidelines provide the starting

7    point that Judge Gerrard will look at in determining what your

8    sentence ought to be?

9    A.   Yes.

10   Q.   Do you understand that Judge Gerrard will consider all of

11   your relevant conduct when determining your sentence?

12   A.   Yes.

13   Q.   For example, he's going to consider such things as how many

14   victims were involved, how much money was involved, whether it

15   was a sophisticated type of transaction that you were carrying

16   out, whether you have a criminal history, those types of things.

17   Do you understand that?

18   A.   Yes.

19   Q.   And once Judge Gerrard considers all of your relevant

20   conduct, do you understand he can sentence you within the

21   guidelines that you've discussed with your attorney, but he could

22   go above or below those guidelines based upon his findings?

23   A.   Yes.

24   Q.   Then, once Judge Gerrard determines how much time you will

25   spend in prison, do you understand you will be required to serve

1    all of that time, less no more than 54 days per year for good

2    time served and then only if you earn good time?

3    A.   Yes.

4    Q.   Now, once you have served your time in prison, you may be

5    placed on supervised release for up to three years.  I want to

6    make sure you understand what that is.  As part of your

7    sentencing order in this case, Judge Gerrard may place

8    restrictions on your conduct or rules that you must follow for a

9    period of up to three years after you serve any prison time.  Do

10   you understand that?

11   A.   Yes.

12   Q.   Do you understand that, if you violate those rules or

13   conditions that are placed in your sentencing order, you can be

14   brought back to court and sent back to jail?

15   A.   Yes.

16   Q.   And do you understand that, if you violate those rules by

17   committing another crime and are found guilty of that separate

18   crime, your sentence on that separate crime could be greater than

19   it otherwise would have been merely because you were still on

20   supervised release for this crime when you committed the next

21   one?  Do you understand that?

22   A.   Yes.

23   Q.   You will be required to pay a $100 mandatory special

24   assessment.  Were you aware of that?

25   A.   Yes.

1    Q.    In cases such as this, restitution may come into play and I

2    want to make sure you know what that is.  If you cause harm to

3    other people through your criminal activity, as part of your

4    sentence the Court can require you to pay for that harm.  That's

5    called restitution.  Do you understand that?

6    A.    Yes.

7    Q.    Do you understand that circumstances of this type of

8    case -- well, actually, any case, but in particularly this type

9    of case, once you get to the time of sentencing, facts will be

10   presented to Judge Gerrard and he may determine that you have

11   caused harm to others and require that you pay for that harm as

12   part of your sentence?  Do you understand that?

13   A.    Yes.

14   Q.    You have a Plea Agreement with the Government which outlines

15   your agreement regarding what should happen at the time of

16   sentencing.  First of all, do you understand that this agreement

17   is between you and the Government and is not necessarily binding

18   on Judge Gerrard?

19   A.    Yes.

20   Q.    I'm sorry?

21   A.    Yes, I understand.

22         THE COURT:  All right.  At this time, then, Mr. Mickle

23   is going to describe the terms of that Plea Agreement to you

24   aloud.  I want you to listen while he does that.  I will ask you

25   questions about what he says.

Corey J. Lavigne, Examination

1      Mr. Mickle.

2          MR. MICKLE:  Your Honor, my understanding of the Plea

3      Agreement includes the provision that the defendant agrees to

4      plead guilty to the one-count Information and admit the

5      forfeiture allegation as set forth in the Information.  And, in

6      exchange for his guilty plea, the United States will not

7      prosecute the defendant federally for any other crimes related to

8      this criminal conduct.

9          Further, pursuant to the Agreement, if the defendant is

10     entitled to an offense reduction for his acceptance of

11     responsibility, the United States will ask the Court to reduce

12     his offense level by one additional level for his acceptance of

13     responsibility.  Also pursuant to the Plea Agreement, the parties

14     agree that his base offense level of six will be increased by

15     four levels because of the number of victims involved.  His

16     offense level should also be increased by two levels because the

17     scheme involved sophisticated means, and an additional two levels

18     because the offense involved possession and use of device-making

19     equipment.

20         Further, pursuant to the Agreement, the defendant may

21     request or recommend additional downward departures or

22     adjustments and the United States may oppose those.  The parties

23     have no agreement concerning the defendant's criminal history

24     other than identified and set forth in the Plea Agreement.  And

25     finally, pursuant to the Plea Agreement, the defendant waives or

Corey J. Lavigne, Examination

1    gives up his right to appeal or collaterally attack the sentence

2    -- excuse me, the conviction and sentence imposed.

3          THE COURT:  Mr. Noerrlinger, does that fairly and

4    accurately and completely describe the Plea Agreement?

5          MR. NOERRLINGER:  It does, Your Honor.

6    BY THE COURT:

7    Q.   Mr. Lavigne, do you want -- did you listen as Mr. Mickle

8    described that Plea Agreement?

9    A.   Yes, I did.

10   Q.   Does his description match your understanding of your

11   agreement with the Government?

12   A.   Yes, it does.

13   Q.   There's a few things we need to go over, sir.  In cases such

14   as this, the Government is often looking for additional

15   information so it can prosecute other people.  That is called

16   cooperation.  I want to make sure that, if you decide to do that,

17   you understand what it is you're doing.  If you provide

18   information to the Government, the Government is not required to

19   do anything in exchange for that information unless you provide

20   what the Government believes to be substantial assistance.  Do

21   you understand that?

22   A.   Yes.

23   Q.   Do you understand it's up to the Government to decide

24   whether the information you provided is of substantial to the

25   Government?

Corey J. Lavigne, Examination

1    A.   Yes.

2    Q.   Do you understand that, if you provide assistance to the

3    Government and the Government believes that it was, in fact, of

4    substantial assistance, it will consider asking that your

5    sentence be lowered?

6    A.   Yes.

7    Q.   Do you understand, if it makes that request, the request

8    actually goes to your sentencing judge, who is Judge Gerrard?

9    A.   Yes.

10   Q.   And do you understand that Judge Gerrard is not required to

11   lower your sentence even if the Government asks him to?

12   A.   Yes.

13   Q.   Your Plea Agreement also includes a waiver of appeal and

14   collateral attack.  I need to make sure you understand what

15   you're giving up here.  Everything that's done by this Court is

16   subject to being looked at by another Court to make sure it was

17   done right.  That process is called an appeal and the Court that

18   looks at it is the Eighth Circuit Court of Appeals.  Do you

19   understand that?

20   A.   Yes.

21   Q.   Do you understand that, under the terms of this Plea

22   Agreement, both as to your conviction and as to the sentence you

23   have not yet received, you're giving up your right to that appeal

24   process, except to claim that you were provided ineffective

25   assistance of counsel?

Corey J. Lavigne, Examination

1    A.    Yes.

2    Q.    Having considered all of your options, have you decided to

3    give up your right to appeal with that single exception?

4    A.    Yes.

5    Q.    Collateral attack is a different type of proceeding.  With a

6    collateral attack proceeding, you can challenge your conviction

7    and your sentence by claiming your constitutional rights were

8    violated.  Do you understand that?

9    A.    Yes.

10    Q.    Do you understand that, under the terms of this Plea

11    Agreement, you're giving up your right to that type of proceeding

12    as well, both as to your conviction and as to your sentence,

13    unless you are claiming that what you're admitting to here today

14    is not a crime or you are claiming that you were provided

15    ineffective assistance of counsel?  Do you understand that?

16    A.    Yes, I do.

17    Q.    Having considered all of your options, have you decided to

18    give up your right to collateral attack with those two

19    exceptions?

20    A.    Yes.

21    Q.    To make it quite simple, sir, what you're doing here today

22    is permanent with very limited and difficult-to-prove exceptions.

23    Do you understand that?

24    A.    Yes.

25    Q.    Knowing that, do you want to give up your right to appeal

Corey J. Lavigne, Examination

1   and collateral attack as stated in the Plea Agreement?

2   A.   Yes, I do.

3   Q.   Has anybody made any promises to you that are not in that

4   Plea Agreement?

5   A.   No, they have not.

6   Q.   Do you understand, sir, that whether you plead guilty or

7   whether you're found guilty at trial you could get the same

8   sentence?

9   A.   Yes.

10  Q.   Putting it a different way, do you understand there's no

11  guarantee the sentence will be less because you pled guilty?

12  A.   Yes.

13      THE COURT:  At this time, then, I'm going to have Mr.

14  Mickle describe for you the factual basis for your plea.  I want

15  you to listen while he does that.  I will ask you questions about

16  what he says.

17      Mr. Mickle.

18      MR. MICKLE:  Your Honor, if the case were to proceed to

19  trial, evidence would be introduced, including evidence that,

20  between approximately May of 2012 and March of 2014, the

21  defendant and others, including Austin Asche and Mitchell Morey,

22  entered into an agreement to produce -- well, to solicit underage

23  individuals to purchase false identification documents,

24  specifically New York State driver's licenses that were not

25  issued under the authority of the State of New York, and that

1    those false identification documents had false dates of birth and

2    they were used to identify the purchasers of those as 21 years of

3    age or older.

4        Evidence would also show that the defendant and other

5    individuals involved in this enterprise purchased and used

6    computer software, computers, printers, laminators, card cutters,

7    adhesive jelly, titanium shavings, and other equipment in the

8    production of those false identification documents, and that

9    those were produced here within the District of Nebraska and

10    mailed to the customers within the District of Nebraska and

11    outside the District of Nebraska.

12        Evidence would also show that, as part of the scheme, the

13    defendant and the other co-conspirators identified -- excuse me,

14    instructed the purchasers of the fake New York driver's licenses

15    to obtain prepaid debit cards, such as MoneyPak or Green Dot

16    cards, for the purchase price and then provide the prepaid card

17    information to the website so that the card price and the profits

18    could then be transferred anonymously to the defendant and his

19    co-conspirators.  And that, thereafter, the individuals

20    re-encoded the prepaid cards' information that they had obtained

21    from the website onto reloadable prepaid debit cards under

22    individuals' names that had been stolen by several of the

23    co-conspirators from an Omaha auto dealership and an Omaha fence

24    company.  And that, thereafter, the evidence would show that

25    those prepaid debit cards were sent to addresses both in the

Corey J. Lavigne, Examination

1    Lincoln and Gretna, Nebraska area, as well as the Ames, Iowa

2    area, and they were delivered to those mailboxes via United

3    States mail, received by the defendant and others, and then

4    retrieved and taken to ATM machines in the Lincoln and Gretna

5    area where the defendant and others withdrew cash from the

6    prepaid debit cards and divided the proceeds among them, and that

7    the proceeds that were obtained from the illegal activity totaled

8    between $256,760.74 and $303,692.56.

9        Evidence would further show that the assets, accounts, and

10   property identified as Nos. 1 through 18 on the Information were

11   property that constituted or derived from proceeds obtained as a

12   result of the violations or were property used or intended to be

13   used to commit the offenses, and that the activity occurred here

14   both within the District of Nebraska and elsewhere.

15       THE COURT:  All right.  Mr. Noerrlinger, do you agree,

16   if this case went to trial, that evidence would go before a jury?

17       MR. NOERRLINGER:  Yes.

18   BY THE COURT:

19   Q.  Mr. Lavigne, did you listen as Mr. Mickle described the

20   evidence against you?

21   A.  Yes.

22   Q.  Is what he said true?

23   A.  Yes.

24   Q.  Between May 12th -- I keep doing that.  Between May of 2012

25   and March of 2014, were you in the District of Nebraska?

1    A.   Yes.

2    Q.   While in the District of Nebraska, did you work along with

3    other people and actually build up a business of selling false

4    identification documents?

5    A.   Yes, I did.

6    Q.   And were the other two people that you were working with a

7    Mr. Asche and a Mr. Morey?

8    A.   Correct.

9    Q.   Did you, along with those two other people, start producing

10   fraudulent New York driver's licenses?

11   A.   Yes.

12   Q.   And did you do that using the Internet and the United States

13   mail service?

14   A.   Yes.

15   Q.   Do you agree that using the Internet and the United States

16   mail service is conducting business across state lines?

17   A.   Yes.

18   Q.   And did you know that the documents that you were producing

19   were, in fact, false identification documents?

20   A.   Yes.

21   Q.   Now, going to the forfeiture claim --

22           THE COURT:  Mr. Noerrlinger, does he have that in front

23   of him?

24           MR. NOERRLINGER:  He does, Your Honor.

25   BY THE COURT:

Corey J. Lavigne, Examination

1    Q.   Could you turn with me, just to help us out a little bit,

2    sir, instead of me reading this all off, pages two and three of

3    the Information?  Have you read this listing here?

4    A.   Yes, I have.

5    Q.   And do you agree that the listed properties and items

6    in -- under the forfeiture portion of the Information, on pages

7    two and three, were items that you used or property that you

8    received as part of your criminal activity?

9    A.   Yes.

10   Q.   And do you agree that these items should, therefore, be

11   forfeited to the United States Government as property used during

12   the commission of a crime?

13   A.   Yes.

14            THE COURT:  Any additional questions, Mr. Mickle?

15            MR. MICKLE:  No, Your Honor.

16            THE COURT:  Mr. Noerrlinger?

17            MR. NOERRLINGER:  No, Your Honor.

18            THE COURT:  Mr. Mickle, do you believe the guilty plea

19   is knowing, intelligent, and voluntary, and that there is a

20   factual basis for it?

21            MR. MICKLE:  Yes, I do.

22            THE COURT:  Mr. Noerrlinger, do you agree?

23            MR. NOERRLINGER:  I do, Your Honor.

24            THE COURT:  Mr. Lavigne, do you want this Court to

25   accept your plea of guilty?

1    THE DEFENDANT:  Yes, I do.

2    THE COURT:  Do you have any questions of me before I

3    proceed?

4    THE DEFENDANT:  No, I do not.

5    THE COURT:  To the charge that, between on or about May

6    of 2012 and March of 2014, here in the District of Nebraska, you,

7    along with others, did work together, combine and conspire, to

8    conduct a business of producing false identification documents,

9    specifically fraudulent New York driver's licenses, and that you

10   did so using interstate commerce, including the United States

11   mail, what do you plead?

12   THE DEFENDANT:  Guilty.

13   THE COURT:  To the forfeiture allegation, do you agree

14   that the property listed on pages two and three of the

15   Information should be forfeited to the United States Government

16   as property used or intended to be used to commit the offenses?

17   THE DEFENDANT:  Yes.

18   THE COURT:  I do find that your guilty plea is knowing,

19   intelligent, and voluntarily, and that there is a factual basis

20   for it.  I will recommend to Judge Gerrard that he accept your

21   plea of guilty.  I will also recommend that he accept your Plea

22   Agreement.  He'll take up the issue of your Plea Agreement at the

23   time of sentencing.  We're looking at a sentencing date of

24   December 3rd at 1:30 p.m., if that works for everyone?

25   MR. MICKLE:  It does, Your Honor.

1      MR. NOERRLINGER:  That works for my calendar, Judge.

2      THE COURT:  Does that work for you, Mr. Lavigne?

3      THE DEFENDANT:  Yes.

4      THE COURT:  All right.  That brings us to the issue of

5  detention.  What is the Government's position?

6      MR. MICKLE:  Your Honor, we've received and reviewed

7  the Pretrial Services report that was prepared in this case.  We

8  have no objection to releasing Mr. Lavigne under the terms and

9  conditions identified in the report.

10     THE COURT:  Mr. Noerrlinger, have you had a chance to

11  talk about the Pretrial Services report with your client?

12     MR. NOERRLINGER:  Yes, Your Honor.  We received it

13  yesterday and went over it.

14     THE COURT:  And is your client in agreement with these

15  terms and conditions?

16     THE DEFENDANT:  He is.

17     THE COURT:  Mr. Lavigne, please raise your right hand.

18  Do you solemnly swear to tell the truth, the whole truth, and

19  nothing but the truth?

20     THE DEFENDANT:  Yes, I do.

21                    COREY J. LAVIGNE, DEFENDANT, SWORN

22                              EXAMINATION

23  BY THE COURT:

24  Q.   If I release you, will you truthfully report to the United

25  States Pretrial Services Agency as directed?

Corey J. Lavigne, Examination

1    A.    Yes, I will.

2    Q.    Will you maintain or actively seek employment?

3    A.    Yes.

4    Q.    Where are you employed at right now?

5    A.    My father's company, Security Fence Company.

6    Q.    It's a security --

7    A.    Security Fence Company.

8    Q.    Okay.  Do you have a passport?

9    A.    I believe they have it.

10   Q.    They, as in the Government, now has it?

11   A.    Yes.

12   Q.    Will you agree not to apply for a new one?

13   A.    Yes.

14   Q.    Will you stay in Nebraska?

15   A.    Yes, I will.

16   Q.    Will you agree not to possess a firearm, destructive device,

17   or other dangerous weapon?

18   A.    Yes, I do.

19   Q.    Will you refrain from any excessive use of alcohol?

20   A.    Yes.

21   Q.    Will you refrain from any use or possession of a narcotic

22   drug, unless it's prescribed?

23   A.    Yes.

24   Q.    Will you submit to drug testing?

25   A.    Yes.

Corey J. Lavigne, Examination

1    Q.   Will you agree not to tamper with that testing?

2    A.   Yes.

3    Q.   Will you report as soon as possible to the supervising

4    officer any contacts you have with law enforcement personnel,

5    including even something as simple as a traffic stop?

6    A.   Yes.

7    Q.   Will you agree to not associate with or communicate with

8    persons known or suspected to be involved in drug use or

9    trafficking, or weapons possession or weapons trafficking,

10   without the prior approval of a supervising officer or the Court?

11   A.   Yes.

12   Q.   Will you submit to a search of your person, place of

13   residence, or vehicle upon the request of law enforcement?

14   A.   Yes.

15        THE COURT:  I think we need the one about not having

16   contact.

17   Q.   Will you agree not to have contact with or associate with

18   persons who are potential victims or witnesses in this case,

19   including Mr. Morey and Mr. Asche?

20   A.   Yes.

21        THE COURT:  All right.  That will need to be added.

22   And then, if you'll add to that, Jeri, "or any other victims or

23   potential witnesses for this case."  And then let's make it a

24   full sentence.  On the "not associate with," let's just say, "The

25   defendant will not associate with" -- There we go.  I think we've

1    got it.

2         All right.  In a moment, you're going to have a box to sign.

3    What you need to understand is, your signature is the last

4    signature to go on there.  It's already -- once you put your

5    signature on there, it becomes an enforceable court order and, as

6    with any court order, if you violate it, the consequence is to go

7    back to jail.  Do you understand that?

8              THE DEFENDANT:  Yes, I do.

9              THE COURT:  All right.  You may sign.

10        Is there anything else we need to take up on the record?

11             MR. MICKLE:  No, Your Honor.

12        (Recessed at 11:27 a.m.)

13                            - - -

14              C E R T I F I C A T E

15        I, Lori J. Sehnert, court-approved transcriber, certify

16   that the foregoing is an accurate transcript from the official

17   digital sound recording provided to me of the proceedings made in

18   the above-entitled matter.

19        s/Lori J. Sehnert          DATE:   September 23, 2015

20   Signature of Approved Transcriber

21                            - - -

22

23

24

25